Argued June 24, affirmed July 6, 1915.

## FRANCISCOVICH v. WALTON.

(150 Pac. 261.)

**Evidence—Judicial Notice—Facts of Common Knowledge.**

1. The court will take judicial notice of the fact that Bulgaria is an independent kingdom, and that a subject thereof is not a national of Russia.

**Treaties—Grounds of Obligation.**

2. The fact that, as a matter of comity, Russian consular officers look after the welfare of Bulgarian subjects in the United States does not give Bulgaria any treaty rights enjoyed by Russia, Bulgaria having no treaty with the United States or consular representative.

**Executors and Administrators—Appointment—Irregularity—Right to Object.**

3. The appointment of a stranger as administrator of a decedent, leaving a wife and heirs at law in a foreign country, made within 30 days after decedent's death and within the time which the widow, heirs at law and creditors have a prior right to apply for appointment, is technically irregular, and will be revoked on application of any of those having a prior right, but another stranger may not maintain a petition to revoke the appointment and obtain his own appointment.

[As to grounds for removal of administrators, see note in 138 Am. St. Rep. 525.]

Death—Executors and Administrators—Actions—Employers' Liability
    Act—Persons Entitled to Sue.

4. An administrator may not settle a claim under the Employers'
Liability Act (Laws 1911, p. 16) for the death of his intestate, or
sue therefor, but that right is vested by law in the surviving widow
of decedent.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.    Statement by MR. JUSTICE MCBRIDE.

This is a proceeding to review the action of the
County Court of Clatsop County in removing plaintiff
as administrator of the estate of Dan Valchanoff, de-
ceased, and appointing defendant, James Walton, Jr.,
in his place.    The record discloses that on May 16,
1914, Dan Valchanoff was killed in an accident; that
on the 20th day of the same month plaintiff filed a peti-
tion in regular form setting forth the fact of the death
of the deceased, that his wife and heirs resided at
Kirilovo, in the kingdom of Bulgaria, and that peti-
tioner was a friend of deceased, who it was alleged
had wages due him in Clatsop County to the amount
of $40, money loaned out in said county in the sum of
$105, and a claim for personal injuries of about $1,500.
He was thereupon appointed administrator of the es-
tate, and gave bond and qualified as such.    Thereafter,
on the 28th of May, 1914, defendant in this suit filed
a petition, the material portion of which is as follows:

"The petition of James Walton, Jr., respectfully
shows: That he is a resident and inhabitant of Mult-
nomah County, Oregon, and the specifically designated
attorney and representative of Hon. Ambrose Gherini,
Russian vice-consul of the imperial Russian consulate,
of San Francisco, California, which consulate has ju-
risdiction of the state of Oregon in consular matters.
That the aforesaid Russian consulate has under its
jurisdiction nationals, not only Russian, but also Bul-
garian, Roumanian, Montenegrin and Servian.    That

Dan Valchanoff died in Clatsop County, Oregon, on or about the 14th day of May, 1914, and at the time of his death was a resident and inhabitant of said Clatsop County, and that he left an estate in said Clatsop County consisting of personal property, the exact value of which your petitioner is not at this time able to give, but upon information and belief reports that the same consists of wages due and accounts receivable in the amount of $145, and an unliquidated claim for his wrongful killing, the value of which is indefinite and uncertain. That as far as your petitioner has been able to learn the heirs of the deceased consist of a father, a mother, and a wife, residing at Kirilovo, Bulgaria, which fact has been by your petitioner communicated to the Russian consulate, that the said heirs may receive knowledge and information of the demise of the deceased in conformance with the spirit and intent of the treaty existing between the United States of America and the empire of Russia. That the *modus vivendi* between the United States of America and the empire of Russia is based upon the most favored nation clause treatment, and, by virtue of the aforesaid, the empire of Russia relies upon the consular convention of 1911 between the United States and Sweden, to wit, and especially article XIV thereof, under and by virtue of which the consul-general, consul, vice-consul general, or vice-consul, or, in his absence, the representatives of the aforesaid, shall have the right to be appointed as administrator in the case of the death of any citizen of Sweden in the United States not having in the country of his decease any known heirs or testamentary executors by him appointed, etc. That said article XIV also provides *inter alia* that the competent local authorities shall at once inform the nearest consular office of the nation to which the deceased belongs of the circumstances, in order that the necessary information may be immediately forwarded to the parties interested. That under and by virtue of the aforesaid *modus vivendi* of the favored nation clause and the aforesaid consu-

lar convention the aforesaid officials of the Russian consulate, or in their absence their representative, has the exclusive right to be appointed administrator of the aforesaid estate of Dan Valchanoff, for the reason that he died in the United States of America leaving no heirs or executors by him appointed in this the said United States of America. That heretofore and previous to the expiration of 30 days from the time of the death of the deceased one Franciscovich, petitioning as a friend of the deceased, has been appointed by this court as administrator of this estate, to which appointment your petitioner specifically and generally objects, for the reason that your petitioner, as the representative of the Russian vice-consul, has a prior and the exclusive right to receive letters of administration by reason of the facts aforesaid. That the Russian consulate is better qualified to care for the interests of its deceased nationals, and that, therefore, in addition to the legal authority which the consular office has to name the administrator, it is just, proper, equitable, and reasonable that the said consulate should supervise the administration of the estate of the aforesaid deceased. Wherefore your petitioner prays that letters of administration heretofore granted to the aforesaid Martin Franciscovich may be revoked, annulled, and set aside; and your petitioner further shows that he is a fit, competent and proper person to receive letters of administration in the aforesaid estate, and therefore prays that letters of administration may be issued to him upon his subscribing to the oath of office as required by law and filing a good and sufficient bond in the sum of $——, which bond shall be subject to the approval of this court.''

Thereupon after hearing argument of counsel, the County Court removed plaintiff and appointed defendant as administrator, giving as a reason therefor:

''That the deceased Valchanoff is a national of the imperial Russian empire, and that under the treaty existing between the United States of America and the

aforesaid imperial Russian empire the consular officers of the latter nation are entitled to preference in the matter of naming the administrator.''

The plaintiff thereafter sued out a writ of review to the Circuit Court, where the order of the County Court was reversed, from which ruling defendant appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. James Walton, Mr. George R. Alexander* and *Mr. Ambrose Gherini,* with an oral argument by *Mr. Walton.*

For respondent there was a brief over the names of *Mr. George C. Fulton* and *Mr. Clarence J. Curtis,* with an oral argument by *Mr. Fulton.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. The petition of defendant for letters of administration makes no charge of maladministration against plaintiff, but is based upon the assumption that petitioner, as a representative of the Russian vice-consul, had a prior and exclusive right to receive letters of administration upon the estate of deceased. The County Court, proceeding upon the same theory, removed plaintiff and appointed defendant. Since the abrogation of the treaty with Russia in 1911, we are unaware of any arrangement with that power whereby its subjects or consuls are entitled to invoke the most-favored nation clause in their intercourse with the United States. The theory of defendant, originally, seems to have been that a Bulgarian subject is a national of Russia; that Russia has a right under the

most-favored nation clause of its treaty or convention with the United States to avail itself of the treaty between the United States and Sweden (37 Stat. 1479), which gave to consular officers of that kingdom a prior right in certain instances to have themselves, or their representatives, appointed administrators of their deceased nationals sojourning in the United States. We take judicial notice of the fact that Bulgaria is an independent kingdom, and that a subject thereof is not a national of Russia. Therefore, while it may be true that, as a matter of comity, Russian consular officers have looked after the welfare of Bulgarian subjects in this country, Bulgaria not having any treaty with or consular representative here, this fact does not give Bulgaria any treaty or convention rights which are enjoyed by Russia. In fact, any right in that behalf was expressly waived by counsel upon the argument here, so that the case stands upon the same footing as though defendant had made the application upon his own initiative.

3. The appointment of plaintiff was technically irregular, because made within 30 days after the death of deceased, within which time the widow, heirs at law, and creditors of the estate had a prior right to apply. Had any qualified member of any of these classes applied it would have been the duty of the court to revoke the appointment of plaintiff and appoint the party so applying; but defendant did not show any right or qualification superior to plaintiff, and it was an abuse of the court's discretion to revoke one irregular appointment in order to make another equally irregular. As remarked by Justice BEAN, in *Cusick* v. *Hammer,* 25 Or. 473 (36 Pac. 525) :

"When the regularity of an appointment already made is attacked, and sought to be revoked because issued to the wrong member of a class entitled to administer, the petitioner must affirmatively show in an issuable form facts which, if true, give him the preference under the law."

The defendant's petition disclosed the fact that he had no legal standing to contest plaintiff's appointment.

4. While outside of the case, though suggested on the argument, it may not be improper to say that it appears that the chief asset of the estate is an unliquidated claim for damages arising out of the death of deceased, as a result of personal injuries. If these injuries arose under circumstances cognizable under the provisions of the Employers' Liability Act, the administrator would have no right to settle the claim or even to bring an action upon it; that right being vested by law in the widow.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.